URSULA UNGARO, UNITED STATES DISTRICT JUDGE
THIS CAUSE came before the Court on the Legislative Defendants' Motion to Dismiss Based on Sovereign Immunity (D.E. 14) and Defendants Florida State University Board of Trustees, John Thrasher, and the State of Florida's Motion to Dismiss (D.E 16).
THE COURT has considered the motion and the pertinent portions of the record and is otherwise fully advised in the premises.
For the reasons set forth below the motions are denied. Defendants shall answer the complaint no later than Friday, June 29, 2018.
BACKGROUND
These facts come from the complaint, which was filed on April 3, 2018. D.E. 1.
Plaintiffs are The National Association of the Deaf ("NAD") and an individual named Eddie Sierra. Id. ¶¶ 9, 12. NAD is an organization comprising individuals who are deaf or hard of hearing. Id. ¶ 9. Sierra is a member of NAD and is deaf. Id. ¶¶ 12, 15.
They have sued several state entities and officials under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 for failing to put closed captions on live and archived videos of Florida legislative sessions. Specifically, Plaintiffs have sued: the state of Florida, the Florida Senate, Joe Negron in his official capacity as President of the Senate, the Florida House of Representatives, Richard Corcoran in his official capacity as Speaker of the House, the Florida State University Board of Trustees ("FSU"), and John Thrasher in his official capacity as President of FSU. Id. ¶¶ 16-22, 28.
The Senate and House live stream their legislative proceedings through their websites and maintain archives of those videos. Id. ¶¶ 23, 24, 26. FSU also owns or operates a website (through its public broadcasting station, WFSU) that live streams *1343 legislative proceedings and maintains archived recordings of such videos. Id. ¶ 25. These videos are not captioned. Id. Defendants have also posted uncaptioned videos on social media. Id. ¶ 27. Because Sierra is deaf, these videos are inaccessible to him without captions. Id. ¶ 30. The same goes for NAD's other hearing-impaired members. Id. Plaintiffs allege that by not providing captions on these videos, Defendants have intentionally discriminated against them and denied them the ability to meaningfully participate in the democratic process. Id. ¶¶ 67, 68. They seek monetary damages and injunctive relief. D.E. 1, p. 14.
In July, 2017, Sierra sent a letter to the Senate and House requesting that they provide captions on the videos of their legislative proceedings. Id. ¶ 34. Defendants have not responded to his letter or provided captions. Id. ¶ 35. NAD filed a complaint against the Senate and House with the Federal Communications Commission. Id. ¶ 36. That complaint was closed in March, 2018. Id. ¶ 38.
Defendants, through The Florida Channel[1] ("TFC") filed a response to NAD's complaint. D.E. 1, Ex. 1. The response explained that TFC produces a 24-hour television programming feed that is closed captioned. Id. Any segments of legislative videos aired on that program, therefore, are captioned. Id. TFC also live streams legislative proceedings, and this live streaming is separate from the 24-hour television program. Id. These live streamed videos, which come from a different source than the captioned videos that are played on the 24-hour television program, are put up on the internet and made available to the public, but they do not include captions. Id.
Based on these allegations, Plaintiffs bring two causes of action against all Defendants: one for violating Title II of the ADA, and another for violating section 504 of the Rehabilitation Act. Id. ¶¶ 44, 57. With respect to the second claim, Plaintiffs allege that all Defendants are recipients of federal funds. Id. ¶ 41.
LEGAL STANDARD
Federal Rule of Civil Procedure 8(a)(2) provides that a plaintiff's pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has stated that a plaintiff must submit "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ).
In considering a motion to dismiss for failure to state a claim, the "plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " Simpson v. Sanderson Farms, Inc. , 744 F.3d 702, 708 (11th Cir. 2014) (quoting Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 ) ). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 557, 127 S.Ct. 1955 ) ). Although "[a] plaintiff need not plead 'detailed *1344 factual allegations[,] ... a formulaic recitation of the elements of a cause of action will not do,' " and the plaintiff must offer in support of its claim "sufficient factual matter, accepted as true, to 'raise a right to relief above the speculative level.' " Simpson , 744 F.3d at 708 (quoting Twombly , 550 U.S. at 555, 127 S.Ct. 1955 ) ).
ANALYSIS
I. Legal Framework
Plaintiffs sue under section 504 of the Rehabilitation Act of 1973 and Title II of the ADA. Section 504 of the Rehabilitation Act provides, in relevant part, that no disabled person shall be denied the benefits of any state program receiving federal funds. 29 U.S.C. § 794. Title II of the ADA extends this prohibition on disability discrimination to all activities of State governments regardless whether the entities receive federal funds. See 42 U.S.C. § 12132 ; 28 CFR 35.103 ("Except as otherwise provided in this part, this part shall not be construed to apply a lesser standard than the standard applied under title V of the Rehabilitation Act ....").
II. Sovereign Immunity
All of the Defendants move to dismiss, first and foremost, on the basis of sovereign immunity.[2] Defendants argue that sovereign immunity bars the Title II claim on its face, and the Rehabilitation Act claim as a factual matter.
A. Overview
Under the Eleventh Amendment, states and state officials sued in their official capacity for damages are immune from suit in federal courts. Kentucky v. Graham , 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Congress may abrogate sovereign immunity, but its power to do so is not absolute. Congress may only abrogate a state's sovereign immunity pursuant to section five of Fourteenth Amendment. Bd. of Trustees of Univ. of Alabama v. Garrett , 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001)
Section five of the Fourteenth Amendment gives Congress the authority to enforce the substantive guarantees contained in section one by enacting "appropriate legislation." Section one provides, in relevant part:
No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws
Thus, Congress may abrogate sovereign immunity for "actual violations" of section one of the Fourteenth Amendment. United States v. Georgia , 546 U.S. 151, 158, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). It may also abrogate sovereign immunity for "a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text" provided the legislation exhibits "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Garrett , 531 U.S. at 365, 121 S.Ct. 955 (quoting Kimel v. Fla. Bd. of Regents , 528 U.S. 62, 81, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) and City of Boerne v. Flores , 521 U.S. 507, 520, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) ) (internal quotations omitted).[3]
*1345 Congruence and proportionality are judged "on an individual or 'as-applied' basis in light of the particular constitutional rights at stake in the relevant category of public services." Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ. , 405 F.3d 954, 958 (11th Cir. 2005). The Supreme Court has not created a test for determining congruence and proportionality. The Tenth Circuit, while grappling with this lack of an applicable framework, reviewed cases from across the country and distilled two guiding principles. See Guttman v. Khalsa , 669 F.3d 1101, 1122 (10th Cir. 2012).
First, it found that "there is a trend of courts holding that, absent the need to vindicate a fundamental right or protect a suspect class, Congress may not abrogate state sovereign immunity." Id. (collecting cases); see also Erwin Chemerinsky, Federal Jurisdiction 495 (6th ed.) ("[I]f the plaintiff is not alleging a constitutional violation and the case does not involve a type of discrimination or a right receiving heightened scrutiny, the state can be sued only if Congress found pervasive unconstitutional state conduct."). And second, the Tenth Circuit determined that congruence and proportionality depends, "to some degree, on how costly it is for a state to comply with the statute." Id. (collecting cases).
B. A Fundamental Right is Implicated and Congress has Found Pervasive Unconstitutional Conduct
Plaintiffs argue that the lack of captions has violated their fundamental right to participate in the democratic process. Defendants admit that the right to participate in the democratic process is a fundamental right, but dispute that that is the right at issue. They argue that the right at issue is a right to access public information, which the Supreme Court has held does not exist.
There is one district court opinion that is squarely on point and which forms the nexus of the parties' arguments: Reininger v. Oklahoma , 292 F.Supp.3d 1254, 1259 (W.D. Okla. 2017). In Reininger , as here, the plaintiff brought suit against the state of Oklahoma, the Oklahoma Senate and House, and the leaders of both legislative branches. Id. at 1258. The plaintiff brought the same claims that Plaintiffs here bring: that the defendants' failure to caption videos of their legislative proceedings violated the ADA and the Rehabilitation Act. Id. As here, the plaintiff argued that the lack of captions violated his right to participate in the political process. Id. at 1262. The Court agreed, finding that the plaintiff had a fundamental right of access to publicly available information needed to participate in the democratic process. Id. The Court also noted that in enacting the ADA, Congress found pervasive discrimination by state governments against the disabled, including the hearing impaired-albeit in the context of access to judicial resources, and not access to legislative proceedings. Id. (citing Tennessee v. Lane , 541 U.S. 509, 527, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (reviewing legislative history and finding that Congress heard "numerous examples of the exclusion of persons with disabilities from state judicial services and programs, including exclusion of persons with visual impairments and hearing impairments from jury service, failure of state and local governments to provide interpretive services for the hearing impaired ....") ).
Plaintiffs here argue that this Court should follow Reininger . Defendants argue that Reininger is wrongly decided because the Supreme Court has held that there is no right to publically available information. They also argue that the lack of closed captions has not interfered with Plaintiffs' right to participate in the democratic *1346 process because Plaintiffs have numerous other ways to do that.
Defendants are correct that "[t]here is no constitutional right to have access to particular government information, or to require openness from the bureaucracy." See Houchins v. KQED, Inc. , 438 U.S. 1, 14, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978) (internal quotations omitted). "The public's interest in knowing about its government is protected by the [g]uarantee of a Free Press, but the protection is indirect." Id. ; Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla. , 141 F.3d 1032, 1035 (11th Cir. 1998) ("There is no First Amendment right of access to public information."). But Defendants are not correct that the right at issue here is simply a right to public information generally. As the court in Reininger pointed out, the case implicated the fundamental right to participate in the democratic process because the information sought was "needed to participate in [that] process." Reininger , 292 F.Supp.3d at 1265.
So too here. Plaintiffs are not seeking just any public information, but rather information that goes to the very heart of the democratic process: the text of legislative proceedings. Accordingly, their fundamental right to participate in the democratic process is implicated.
But even if their fundamental right to participate in the democratic process was not implicated, abrogation of Defendants' sovereign immunity is still appropriate because Congress found pervasive discrimination by state governments against the hearing impaired. See Chemerinsky, 495 (noting that if the plaintiff has not been deprived of a fundamental right, the state can still be sued if Congress found pervasive unconstitutional state conduct.).
In Lane , the Supreme Court noted that "Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systemic deprivations of fundamental rights." Lane , 541 U.S. at 524, 124 S.Ct. 1978. The court observed "numerous" examples of discrimination against the hearing impaired in the provision of judicial services, id. , and in his dissent in Garrett , Justice Breyer documented more than a thousand instances of state discrimination against the hearing impaired in other contexts. Garrett , 531 U.S. at 391-424, 121 S.Ct. 955 (Breyer, J., dissenting); see also 42 U.S.C. § 12101(a)(3) ("The Congress finds that ... discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services .") (emphasis added).
C. Congruence and Proportionality
Because the Court finds that a fundamental right is at issue, and that Congress enacted Title II of the ADA to correct a history of pervasive discrimination against the disabled by state governments, the congruence and proportionality test applies.
Where, as here, a fundamental right is implicated, "Congress's historical findings need not be as exhaustive, and the congruence and proportionality of the remedial measure need not be as precise." Guttman , 669 F.3d at 1122. Lane is instructive. There, the court held that Title II's requirement of accessibility was congruent and proportional to its object of enforcing the right of access to the courts for the hearing impaired. 541 U.S. at 531, 124 S.Ct. 1978. The Court held that Title II was a limited response to historical discrimination. Id. It required the states to take reasonable measures to remove barriers to access, but did not require them to "employ any and all means to make juridical *1347 services accessible to persons with disabilities." Id. "It requires only 'reasonable modifications' that would not fundamentally alter the nature of the service provided ...." Id. And it provides defendants certain defenses, such as undue burden. Id.
The same goes for Title II's application to the present case. Adding captions to legislative videos removes a barrier to access a service already provided to those who are not hearing impaired. Additionally, Defendants may assert those affirmative defenses provided in the ADA. Accordingly, Title II is congruent and proportional as applied to the interest of Florida's deaf population in obtaining access to the proceedings of the Florida legislature and Congress properly abrogated Florida's sovereign immunity in this regard.
D. Ex Parte Young
Ex Parte Young holds that the Eleventh Amendment does not bar suits against state officers where the plaintiff seeks prospective injunctive relief. 209 U.S. 123, 28 S.Ct. 441. Thus, even if sovereign immunity barred Plaintiffs' claims against the State entities, it would not bar them-to the extent they seek injunctive relief only-against the individuals. See generally, Garrett , 531 U.S. at 374 n. 9, 121 S.Ct. 955 ; Fla. Ass'n. of Rehab. Facilities v. Fla. Dept. of Health and Rehab. Servs. , 225 F.3d 1208, 1219 (11th Cir. 2000).
E. Rehabilitation Act Claim
Under the Rehabilitation Act, a state waives its sovereign immunity if it receives federal funds. Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees , 344 F.3d 1288, 1291 (11th Cir. 2003). The legislative defendants attach to their motion the declaration of Lisa Swindle, Director of the Finance & Accounting Office in the Office of Legislative Services. D.E. 14-1. Ms. Swindle states that based on a reasonable search of her records as well as her personal knowledge and memory the Florida Legislature has not received any federal financial assistance since 1999. Id. ¶ 5. Defendants argue that the Court may consider this declaration because sovereign immunity is a jurisdictional issue and Rule 12(b)(1) permits a court to entertain a factual challenge to jurisdiction.
The Court is not obligated to consider extrinsic facts, and for two reasons it will not do so here. See Houston v. Marod Supermarkets, Inc. , 733 F.3d 1323, 1336 (11th Cir. 2013). First, the only evidence before the Court is a self-serving affidavit. And second, information about the Legislature's sources of financing may not be available to Plaintiffs absent discovery. The Court will not, therefore, dismiss the Rehabilitation Act claim at this stage.
III. Other Arguments
Defendants FSU, John Thrasher, and the state of Florida make several other arguments that the complaint should be dismissed.
A. Florida as a Proper Party
These defendants argue that Florida is not a monolithic entity, but rather a collection of parts, and that each independent part should be sued individually. This argument is without merit. Both Acts anticipate suits against the states. 45 C.F.R. § 84.3 (including "any state" in the definition of "recipient"); 42 U.S.C. §§ 12132, 12131 (forbidding a "public entity" from discriminating against a disabled person, and it defining "public entity" as "any State or local government.").
B. Failure to State a Claim
The non-legislative Defendants also argue that Plaintiffs have failed to state a claim because they fail to allege that they *1348 were excluded from participating in a public entity's services or activities.
The elements of a Title II claim and a section 504 Rehabilitation Act claim are the same. See Cash v. Smith , 231 F.3d 1301, 1305 (11th Cir. 2000). To state a claim under either, a plaintiff must show (1) that he is a qualified individual, (2) excluded from participating in a public entity's services, programs, or activities, (3) because of his disability. Id. Plaintiffs argue that the second element is not satisfied because the Florida Channel television program provides 24-hour closed captioned programming that includes legislative proceedings.
Whether a plaintiff was excluded from a public service turns on whether he had an "equal opportunity" as someone who was not disabled. Liese v. Indian River Cty. Hosp. Dist. , 701 F.3d 334, 342 (11th Cir. 2012). The Florida Channel's response Plaintiff's FCC complaint (D.E. 1, Ex. 1) indicates that some legislative proceedings are broadcast with closed captions. But not all. A person who is not hearing impaired may watch all legislative proceedings online, but a person who is hearing impaired may watch only those legislative proceedings that The Florida Channel chooses to broadcast. This is not an "equal opportunity." Accordingly, Plaintiffs' have stated a claim.
C. Plaintiffs' Entitlement to Monetary Damages
These defendants next argue that Plaintiffs' claims for damages must be dismissed because Plaintiffs have not demonstrated intentional discrimination or bad faith.
Compensatory damages are available under Title II and Section 504 upon a showing of "discriminatory intent," which can be satisfied by a showing of deliberate indifference. Liese v. Indian River Cty. Hosp. Dist. , 701 F.3d 334, 342 (11th Cir. 2012). Deliberate indifference occurs when "the defendant knew that harm to a federal protected right was substantially likely and ... failed to act on that likelihood." Id. at 344 (internal quotations omitted) (emphasis in original). Here, Plaintiffs allege that they gave Defendants notice of the alleged violations of Title II and Section 504. NAD filed a complaint with the FCC, which prompted a response from Defendants, and Sierra sent letters to the House and Senate. D.E. 1 ¶¶ 34, 36. Defendants have not responded to Sierra's letters. Id. ¶ 35. And Defendants' response to the FCC complaint evidences no intent to change their current practices. These allegations are sufficient, at the pleading stage, to allege that Defendants knew and failed to act. See Fed. R. Civ. P. 9 ("knowledge, and other conditions of a person's mind may be alleged generally.").
CONCLUSION
For the reasons discussed above, it is hereby
ORDERED AND ADJUDGED that the motions to dismiss (D.E. 14 & D.E. 16) are DENIED. Defendants SHALL ANSWER the complaint no later than Friday, June 29, 2018. It is further
ORDERED AND ADJUDGED that the Initial Planning and Scheduling Conference is hereby CANCELLED.
DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of June, 2018.

The Florida Channel describes itself as "a public affairs programming service wholly funded by the Florida Legislature and produced and operated by Florida State University's PBS Station WFSU-TV, Tallahassee, Florida." D.E. 1, Ex. 1.

The legislative Defendants move exclusively on this basis.

This standard applies where, as here, a plaintiff seeks money damages. Id. at 375, n.9, 121 S.Ct. 955. Pursuant to Ex parte Young , 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Eleventh Amendment does not bar suits against state officers where the plaintiff seeks prospective injunctive relief.